486 S.E.2d 19

**BRUCETON BANK, a West Virginia Corporation, and Mimi Shaffer, Plaintiffs Below, Appellees**

v.

**UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, Defendant Below, Appellant.**

No. 23398.

Supreme Court of Appeals of West Virginia.

Submitted March 18, 1997.

Decided April 14, 1997.

Peter G. Zurbuch, Busch & Talbott, L.C., Elkins, for Appellant.

Harry M. Rubenstein, Kay, Casto, Chaney, Love & Wise, Morgantown, John R. Hoblitzell, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellees.

McHUGH, Justice.

This declaratory judgment action is before this Court upon an appeal from the final order of the Circuit Court of Monongalia County, West Virginia, entered on December 18, 1995. As reflected in that order, the circuit court held that the appellant, the United States Fidelity and Guaranty Insurance Company (hereinafter USF & G), had a duty to defend the appellees, the Bruceton Bank and Mimi Shaffer, a loan officer at the bank, with regard to an underlying lender liability action filed against the appellees by Thomas Cueto and Carol Cueto. As a result of the ruling now being appealed, USF & G was ordered to reimburse the appellees in the amount of $34,182 in litigation expenses.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, and particularly in view of this Court's recent decision in *State Bancorp, Inc., v. United States Fidelity and Guaranty Insurance Company*, 199 W.Va. 99, 483 S.E.2d 228 (1997), we reverse the final order. Moreover, we remand this action to the circuit court for the entry of an order dismissing this matter from the circuit court's docket.

*The Facts*

In April 1992, Thomas Cueto and Carol Cueto applied for a $60,000 to $72,000 loan at a Monongalia County branch office of the Bruceton Bank. The Cuetos sought the loan in order to purchase a home to locate upon their property in Taylor County, West Virginia. According to the Cuetos, Bruceton Bank loan officer Mimi Shaffer verbally assured them that the loan would be approved as soon as they sold the home they occupied at that time in Monongalia County. As indicated in the final order, the Cuetos asserted that they sold their Monongalia County home in reliance upon Ms. Shaffer's assurances, before they were able to locate a new home upon their Taylor County property. The Bruceton Bank, however, denied the Cuetos' loan application.

Based upon the above, the Cuetos filed the underlying action against the bank and Ms. Shaffer. The action was styled *Cueto, et al., v. Bruceton Bank, et al.*, Civil Action No. 94–C–140 (Monongalia County), and the complaint alleged causes of action for breach of contract, bad faith, fraudulent misrepresentation, negligence, constructive fraud, promissory estoppel and discrimination. Importantly, as the record indicates, all of the allegations of the complaint arose from two related events, i.e., the assurances of Ms. Shaffer and the denial of the Cuetos' loan application.[1]

During the period in question, the Bruceton Bank was covered by two insurance poli-

---

1. As stated above, the complaint of the Cuetos alleged breach of contract, bad faith, fraudulent misrepresentation, negligence, constructive fraud, promissory estoppel and discrimination.

   With regard to breach of contract, the Cuetos asserted in the complaint that, when they sold their Monongalia County property, "they accepted the conditional offer extended to them by defendant, Mimi Shaffer on behalf of defendant, Bruceton Bank, and thus caused a Contract to lend money to come into existence, binding upon the defendant, Bruceton Bank and the plaintiffs." With regard to the allegation of bad faith, the Cuetos asserted that the "wrongful acts and omissions" of the Bruceton Bank and Mimi Shaffer, concerning the contract to lend money, con-

cies issued by USF & G. Those insurance policies, more particularly described below, were a commercial general liability policy (CGL) and a commercial umbrella liability policy (CUL).[2] Based upon the policies, the Bruceton Bank presented the Cueto claim to USF & G for defense and confirmation of indemnification. However, by letter dated June 28, 1994, USF & G denied coverage, indicating that the Cueto claim was not within the scope of the two policies. As the USF & G letter stated: "Since there is no provision in your coverage forms that would trigger coverage, we must advise you that we will be unable to provide you with a defense." Thereafter, the Bruceton Bank and Mimi Shaffer employed their own attorney to defend the Cueto action. Although the Cueto action was ultimately dismissed, the bank and Ms. Shaffer incurred substantial expenses during the litigation.

In December 1994, the Bruceton Bank and Mimi Shaffer filed the current declaratory judgment action against USF & G. *See W. Va. Code,* 55–13–1 [1941], *et seq.* According to the Bruceton Bank and Mimi Shaffer,

stituted a breach of an "implied covenant of good faith and fair dealing."

The allegation of fraudulent misrepresentation was premised upon the assertion that, in making assurances to the Cuetos concerning their loan application, Ms. Shaffer knew or should have known that a loan had not been approved by the bank. Moreover, the negligence claim was based upon the assertion that, "by failing to properly monitor the false representations made by defendant, Mimi Shaffer," the Bruceton Bank failed to exercise that degree of care, diligence or expertise that the public is entitled to expect of reasonably competent banks.

The alleged conduct of Mimi Shaffer was also directly linked to the allegations in the complaint of constructive fraud and promissory estoppel. Finally, the allegation of discrimination was based upon an assertion that the denial of the Cuetos' loan application was motivated, in part, by discrimination based upon "race and national origin."

In the current declaratory judgment action, concerning whether the Cueto complaint triggered a duty of USF & G to defend, the Bruceton Bank and Mimi Shaffer have emphasized the Cuetos' allegations of breach of contract, promissory estoppel and negligence, rather than specifically focusing upon all of the allegations of the complaint. As the brief of the Bruceton Bank and Mimi Shaffer states: "[I]t is clear that at least one or more of the claims, particularly breach of contract, promissory estoppel and neg-

USF & G had a duty under both the commercial general liability and commercial umbrella liability policies to provide a defense with regard to the Cueto claim. Following a hearing conducted in April 1995, the circuit court entered the final order of December 18, 1995, holding that USF & G had a duty to defend the Bruceton Bank and Mimi Shaffer in the Cueto action. In particular, viewing the Cueto complaint as primarily alleging breach of contract, the circuit court stated: "The Court finds that the alleged breach of contract constituted an 'occurrence' as contemplated in the insurance policies, and thereby falls within the coverage of the insurance policies." As a result, the circuit court ordered USF & G to reimburse the Bruceton Bank and Mimi Shaffer in the amount of $34,182 in litigation expenses, with regard to both the Cueto action and the declaratory judgment action. This appeal followed.

### The USF & G Policies

As indicated above, the Bruceton Bank was covered by a commercial general liability

ligence are covered by the above-referenced insurance policies thus creating a duty to defend all of the claims [.]" In their amended complaint for declaratory judgment relief, however, the Bruceton Bank and Ms. Shaffer indicate that the Cueto action "essentially is a breach of contract action [.]"

2. As indicated in the petition for appeal, the Bruceton Bank had additional insurance coverage to that provided by USF & G. Specifically, USF & G asserts that the Bruceton Bank had a professional liability policy which had been issued by the Progressive Insurance Company and which contained a $50,000 deductible. According to USF & G, a professional liability policy typically covers the liability of bank officers and executives for misrepresentations and, here, would more closely cover the type of risk presented by the Cueto claim.

The Bruceton Bank and Mimi Shaffer correctly respond, however, that the professional liability policy issued by the Progressive Insurance Company should not be considered in this appeal because Progressive was never made a party to this declaratory judgment action and because the policy issued by Progressive was never made a part of the record. Nor did the final order of December 18, 1995, address any issue of insurance coverage raised by the existence of such a policy. Accordingly, the professional liability policy is not before this Court and will not be considered. *See State Bancorp, supra* n. 6.

policy (CGL) and a commercial umbrella liability policy (CUL) issued by USF & G. Under Coverage A of the CGL policy, USF & G agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Importantly, as clarified under Coverage A, the CGL insurance applied to bodily injury and property damage only where the bodily injury or property damage was caused by an "occurrence." The term "occurrence" was defined in the CGL policy as meaning "an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions." (emphasis added). Excluded from Coverage A of the CGL policy was bodily injury or property damage "expected or intended from the standpoint of the insured."

Under Coverage B, entitled "Personal and Advertising Injury Liability," of the CGL policy, USF & G agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage part applies." Whereas advertising injury under the CGL policy included injuries arising from the publication of defamatory material, the phrase "personal injury" was defined in the policy as including an injury arising from "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy [.]"

On the other hand, the commercial umbrella liability policy (CUL) issued by USF & G contained, in Coverage A, an "Excess Liability" provision. Under that provision, USF & G agreed to pay "those sums, in excess of the amount payable under the terms of any 'underlying insurance,' that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies [.]"

Moreover, under Coverage B of the CUL policy, entitled "Extended Liability," USF & G agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies.... The 'injury' must be caused by an 'incident.'" The term "injury" was defined in the CUL policy as including bodily injury, property damage, advertising injury

and personal injury. The term "incident" was defined as including "an *accident*." (emphasis added). As with the CGL policy, the phrase "personal injury" was defined in the CUL policy as including an injury arising from "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy [.]" Finally, under Coverage B of the CUL policy, the phrase "bodily injury" was defined as "bodily injury, sickness, disease, disability, humiliation, shock, mental anguish or mental injury sustained by a person, including death resulting from any of these at any time."

### Standard of Review

In syllabus point 3 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), this Court held: "A circuit court's entry of a declaratory judgment is reviewed de novo." *See also* syl. pt. 1, *Randolph County Board of Education v. Adams*, 196 W.Va. 9, 467 S.E.2d 150 (1995).

Here, USF & G contends that the commercial general liability policy (CGL) and the commercial umbrella liability policy (CUL) it issued were "occurrence" or "incident" based policies, both of which contemplated insurance coverage in the event of an "accident." According to USF & G, therefore, inasmuch as the underlying Cueto action constituted a lender liability matter grounded essentially upon breach of contract, no insurance coverage or duty to defend arose. Moreover, USF & G indicates that the Bruceton Bank made a "deliberate business decision" to deny the Cuetos' loan application, thus effectuating the exclusion in Coverage A, mentioned above, for occurrences "expected or intended from the standpoint of the insured." Consequently, USF & G contends that the circuit court committed error in holding that it had a duty to defend against the Cueto claim.

On the other hand, the Bruceton Bank and Mimi Shaffer contend that the circuit court correctly held that the duty of USF & G to defend was triggered by the allegation in the Cueto complaint of breach of contract. Moreover, they emphasize that the Cueto complaint also alleged negligence, which would also give rise to a duty to defend. In

addition, the Bruceton Bank and Mimi Shaffer suggest that, since the Cuetos alleged that they sold their Monongalia County home in reliance upon Ms. Shaffer's assurances of a forthcoming loan, the Cueto complaint raises an issue under the CGL and CUL policies of "wrongful eviction," which would, in itself, give rise to a duty to defend.

### The State Bancorp Case

In *State Bancorp, supra,* Barbara and Richard Tyman applied for a loan from the same bank involved herein, the Bruceton Bank, to develop their real estate in Monongalia County. For that purpose, the Tymans received loans from the Bruceton Bank totaling $25,000, although they asserted that an officer of the bank had orally promised them a bank loan of $75,000. The Tymans subsequently failed to make payments upon the loans, and the bank began foreclosure proceedings. Although the Tymans instituted bankruptcy proceedings, the bankruptcy court permitted the foreclosure to proceed. At the foreclosure sale, the Bruceton Bank purchased the property and later conveyed the property to the bank's attorney.

The Tymans filed a complaint against the Bruceton Bank alleging (1) the tort of outrage, because the bank allegedly forced the Tymans into bankruptcy for the purpose of acquiring their property, (2) breach of contract, concerning the alleged promise to make a $75,000 loan, (3) civil conspiracy, concerning the bank's alleged intent to acquire the Tymans' property, and (4) violation of state banking laws, concerning the foreclosure and sale of the property. The Tymans stated in their complaint that they suffered severe emotional distress, lost their home and property, were forced into bankruptcy, had their credit ruined and lost expected profits from the development of the property.

As in this action, the Bruceton Bank, in *State Bancorp,* had both commercial general liability and commercial umbrella liability insurance. That insurance was provided to the bank by the Aetna Casualty & Surety Company and subsequently by USF & G. Importantly, the Aetna and USF & G policies, in *State Bancorp,* and the USF & G policies in this action were virtually identical.

In *State Bancorp,* after incurring various expenses in defending the Tyman action, the Bruceton Bank instituted a declaratory judgment action against Aetna and USF & G asserting that those companies had breached a duty to defend the bank. Finding that the Tymans' allegation of breach of contract concerning the loan they sought from the bank constituted an "occurrence" within the meaning of the insurance policies, the circuit court agreed with the Bruceton Bank and ordered Aetna and USF & G to reimburse the bank for the expenses.

Upon appeal, this Court, in *State Bancorp,* examined the Tyman complaint in the underlying action to determine whether any of its allegations were "reasonably susceptible of an interpretation" of coverage under the Aetna and USF & G insurance policies. *Horace Mann Insurance v. Leeber,* 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988).[3] With regard to the allegation of breach of contract in the complaint, this Court, consistent with a number of authorities from other jurisdictions, held that such a breach by Bruceton Bank would not constitute an occurrence or accident within the meaning of Coverage A of the commercial general liability policy. As this Court stated: "[T]he breach of contract

---

**3.** In *Leeber,* this Court stated:

First, any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer. This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay. Second, the duty of an insurer to defend an insured is generally broader than the obligation to provide coverage, that is, to pay a third party or to indemnify the insured, in light of the language in the typical liability policy which obligates the insurer to defend even though the suit is groundless, false or fraudulent. Third, an insurer's duty to defend is normally tested by *whether the allegations in the complaint against the insured are reasonably susceptible of an interpretation that the claim may be covered* by the terms of the insurance policy. Consequently, there is no requirement that the facts alleged in the complaint against the insured specifically and unequivocally delineate a claim which, if proved, would be within the insurance coverage.

180 W.Va. at 378, 376 S.E.2d at 584. (emphasis added).

allegation in the Tymans' complaint is entirely foreign to the risk insured against in coverage A of Aetna's and USF & G's CGL policies."

Moreover, this Court, in *State Bancorp*, determined that the remaining allegations of the Tyman complaint were not subject to Coverage A of the commercial general liability policies. As this Court stated in the *State Bancorp* opinion:

[T]he Tymans asserted the following three counts in their complaint: the tort of outrage, the tort of civil conspiracy, and the violation of state banking laws. These three counts are rooted in the Tymans' allegation throughout their complaint that the appellees engaged in an *intentional* outrageous scheme.... [T]he definition of an 'occurrence' does not include actions which are *intended* by the insured.

(emphasis in original). Thus, there was nothing in the Tyman complaint which triggered coverage under the provisions of Coverage A of the Aetna and USF & G policies.

However, in *State Bancorp*, inasmuch as the Tyman complaint suggested that the Tymans had been wrongfully evicted by the Bruceton Bank, the provisions of Coverage B of the Aetna and USF & G commercial general liability policies were invoked. As in the action now before us, the Aetna and USF & G commercial general liability policies, in *State Bancorp*, provided coverage in certain circumstances under Coverage B for wrongful eviction. Noting that the Aetna policy was clearly not in effect at the time the eviction occurred, this Court found for Aetna. However, this Court, in *State Bancorp*, remanded the action to the circuit court as to USF & G to determine (1) whether the USF & G commercial general liability policy was in effect at the time the eviction occurred and (2) if so, whether USF & G had a duty to defend the Bruceton Bank under the provisions of Coverage B.

Finally, in *State Bancorp*, with regard to the commercial umbrella liability provisions of Aetna and USF & G, this Court found in favor of Aetna for the same reasons set forth above and remanded the action as to USF & G upon the wrongful eviction question. With regard to USF & G, this Court noted, in *State Bancorp*, that because of the uncertainty concerning the applicability of Coverage B of the USF & G commercial general liability policy (CGL), coverage under the excess and extended liability provisions of the USF & G commercial umbrella liability policy (CUL) were likewise uncertain, as to the Tymans' alleged wrongful eviction, and remand to the circuit court was necessary. Specifically, with regard to the extended liability provided to the bank by USF & G, this Court observed, in *State Bancorp*, that, as with the CGL policy, the commercial umbrella liability policy (CUL) provided coverage in certain circumstances for wrongful eviction.

## Discussion

In syllabus point 1 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), this Court held: "Where an insured is required to retain counsel to defend himself in litigation because his insurer has refused without valid justification to defend him, in violation of its insurance policy, the insured is entitled to recover from the insurer the expenses of litigation, including costs and reasonable attorney's fees." *See also* syl. pt. 3, *Marshall v. Fair*, 187 W.Va. 109, 416 S.E.2d 67 (1992). Here, as indicated above, the insurance policies in *State Bancorp* and the USF & G policies in this action were virtually identical. Thus, our inquiry, as in *State Bancorp*, concerns whether the allegations in the complaint in the underlying action "are reasonably susceptible of an interpretation that the claim may be covered" by the terms of the commercial general liability (CGL) and commercial umbrella liability (CUL) policies. *See* n. 3, *supra*. *See also Pitrolo, supra*, 176 W.Va. at 194, 342 S.E.2d at 160.

■ Clearly, USF & G is correct in its contention that the commercial general liability policy (CGL) and the commercial umbrella liability policy (CUL) it issued to the Bruceton Bank were "occurrence" or "incident" based policies, both of which contemplated insurance coverage in the event of an "accident." In particular, Coverage A of the CGL policy applied to bodily injury and property damage, only where the bodily inju-

ry or property damage was caused by an "occurrence" or "accident." Similarly, Coverage B, the Extended Liability portion of the CUL policy, applied to certain injuries caused by an "incident" or "accident." As we indicated in *State Bancorp*, a breach of contract allegation in an underlying lender liability action is foreign to the risk insured against under such policies. In the context of the CGL policy, the *State Bancorp* opinion observes: "As some courts have recognized, a breach of contract which causes 'bodily injury' or 'property damage' is not an event that occurs by chance or arises from unknown causes, and, therefore, is not an 'occurrence' as that word is defined in Aetna's and USF & G's CGL policies." 199 W.Va. at 105, 483 S.E.2d at 234.

Nor do the remaining allegations of the underlying complaint alter the basic nature of the Cueto action as one grounded essentially upon breach of contract. Although, for example, the Bruceton Bank and Ms. Shaffer have emphasized the Cuetos' allegations of promissory estoppel and negligence, the Cueto action was manifestly a lender liability action precipitated, as the complaint suggests, by a failed "contract to lend money." Thus, the allegations in the Cueto complaint of promissory estoppel, negligence, *etc.*, notwithstanding, the damages claimed by the Cuetos (1) more appropriately had their origin in contract, rather than in tort, or (2) were subject to the exclusion set forth in Coverage A of the CGL policy, discussed in *State Bancorp*, for intentional acts of the insured. *See Silk v. Flat Top Construction, Inc.*, 192 W.Va. 522, 526, 453 S.E.2d 356, 360 (1994). By analogy, allegations concerning the tort of outrage, civil conspiracy and the violation of state banking laws, under the circumstances of *State Bancorp*, did not give rise to a duty by the insurer to defend. As the Bruceton Bank and Ms. Shaffer indicated in their amended complaint for declaratory relief, the Cueto action "essentially is a breach of contract action[.]" *See* n. 1, *supra.*

■ As in *State Bancorp*, an additional issue has been raised as to whether an alleged "wrongful eviction" gave rise to a duty by USF & G to defend the Cueto claim. Specifically, the Bruceton Bank and Ms.

Shaffer suggest that, since the Cuetos allege that they sold their Monongalia County home in reliance upon Ms. Shaffer's assurances of a forthcoming loan, the Cueto complaint raises an issue under the CGL and CUL policies of "wrongful eviction." As set forth above, both the CGL and the CUL policies defined the phrase "personal injury" as including an injury arising from wrongful eviction. However, unlike *State Bancorp*, which involved a foreclosure sale specifically described in the Tyman complaint, no foreclosure sale occurred in this action, and no such sale was, thus, mentioned in the Cueto complaint. For that reason, the allegations in this action are less complex than in *State Bancorp*, and this action lacks the compelling quality which, in *State Bancorp*, necessitated a remand to the circuit court upon the "wrongful eviction" issue. Here, the Cuetos simply asserted that they were wrongfully evicted because they were induced to sell their first home in order to obtain a loan for another home.

In *Farmers & Mechanics Mutual Fire Insurance Company v. Hutzler*, 191 W.Va. 559, 447 S.E.2d 22 (1994), involving a commercial liability insurance policy, an action was filed against the insured for allegedly selling alcoholic beverages to an underage purchaser in violation of West Virginia law. Such a violation, if contrary to statute, was excluded from coverage under the policy. Determining, however, in *Hutzler*, that the insurer wrongfully denied coverage without investigating the insured's potential liability *at common law* for the sale, this Court held in the syllabus:

When a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage that the insurer is obligated to provide.

■ It should be noted, however, that the opinion in *Hutzler* was rather attenuated and did not cite this Court's earlier decisions in *Leeber* and *Pitrolo, supra.* Nor did *Hutzler* discuss the standard expressed in those cases that "an insurer's duty to defend is *normally* tested by whether *the allegations in the com-*

*plaint* against the insured are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Leeber, supra,* 180 W.Va. at 378, 376 S.E.2d at 584. (emphasis added). Here, for example, the underlying action clearly constituted a lender liability matter grounded upon a breach of contract theory. The mandate of *Hutzler* to "conduct a reasonable inquiry into the facts" behind the allegations of the complaint would, under the circumstances of this action, effectively constitute an overstatement of the above standard set forth in *Leeber* and *Pitrolo.*

Therefore, this Court holds that where, under a commercial general liability policy and a related commercial umbrella liability policy issued to a bank, insurance coverage is provided for certain injuries and damages caused by an "occurrence" or an "incident," and the policies expressly equate the terms "occurrence" and "incident" with an "accident," no such insurance coverage, or duty to defend or investigate by the insurer, arises, where the underlying case against the bank, concerning the denial of a loan, is grounded upon breach of contract and is in the nature of a lender liability action. Although a case in the nature of a lender liability action would, ordinarily, be foreign to the risk insured against as reflected by such insurance policies, included in the consideration of whether the insurer has a duty to defend is whether the allegations in the complaint against the bank are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies. To the extent that the syllabus point in *Farmers & Mechanics Mutual Fire Insurance Company v. Hutzler,* 191 W.Va. 559, 447 S.E.2d 22 (1994), differs from these principles, it is hereby clarified.

Upon all of the above, this Court is of the opinion that no duty to defend or provide coverage under the commercial general liability (CGL) or commercial umbrella liability (CUL) policies arose with regard to the underlying Cueto action. Accordingly, this Court reverses the final order of the Circuit Court of Monongalia County, entered on December 18, 1995, and we remand this action to that court for the entry of an order dismissing this matter from the circuit court's docket.

Reversed and remanded.