No. 23-ICA-409 – *West Virginia Mutual Insurance Company v. Steven R. Matulis, M.D.*

**FILED**

**December 12, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

LORENSEN, JUDGE, concurring in part and dissenting in part:

I concur in the majority's opinion to reverse in part the circuit court's May 4, 2021, order granting Matulis' motion for partial summary judgment on the issue of Mutual's duty to defend. I agree with the majority that the underlying complaints filed in Kanawha County Case Nos. 17-C-1057, 18-C-575, 18-C-578, 18-C-576, 16-C-1709, 16-C-1738, 18-C-985, and 18-C-205, at their essence, allege claims of intentionally tortious sexual misconduct barred by the Policy's intentional acts exclusion, and that the circuit court erred in finding Mutual had a duty to defend Matulis in those cases.

I respectfully dissent from the majority's decision to affirm in part the circuit court's May 4, 2021, order. The majority concludes that Mutual had a duty to defend Matulis in Kanawha County Case Nos. 18-C-15, 17-C-1579, 18-C-176, 16-C-497, 16-C-1723, as well as against the claim alleged in the Notice of Claim filed by plaintiff L.B. I disagree, because these complaints (and notice of claim) also essentially allege claims of intentionally tortious sexual misconduct. The basis of plaintiffs' claims is that Matulis intentionally and nonconsensually touched plaintiffs' breasts or vaginal areas (together "intimate areas") during colonoscopy procedures. Although some plaintiffs characterize his conduct as an examination and raise medical negligence claims under the Medical Professional Liability Act (MPLA), this labeling does not change the essence of the claims.

1

MPLA claims require plaintiffs to identify—and ultimately prove—that the medical provider's negligent act proximately caused an injury separate from the breach of a standard of care itself. However, despite the inclusion of negligence language and MPLA counts, plaintiffs do not identify injuries proximately caused by Matulis' conduct when that conduct is construed as a legitimate but negligent medical examination. However, for their intentional tort claims, plaintiffs clearly allege an injury: severe emotional distress caused by Matulis' harmful and offensive sexual misconduct in touching their intimate areas. Because plaintiffs' alleged injuries are solely intentional tort injuries, the nature and essence of their complaints are sexual misconduct claims, which Mutual had no duty to defend. Accordingly, I would reverse the circuit court's May 4, 2021, order in totality.[1]

## I. Duty To Defend

"[I]ncluded in the consideration of whether [an] insurer has a duty to defend is whether the allegations in the complaint . . . are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance polic[y]." Syl. Pt. 5, *W. Va. Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 602 S.E.2d 483 (2004) (quotation omitted). The Supreme Court of Appeals of West Virginia ("SCAWV") has clarified that,

---

[1] Because I believe the Court should reverse this order in its entirety, I do not believe it was necessary to reach the merits of Mutual's other assignments of error. Because Mutual had no duty to defend Matulis against any complaints, he is not entitled to any breach of contract damages, or any damages or attorney fees awarded pursuant to *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986). However, as the majority reaches those issues, I agree with their analysis and judgment on Mutual's additional assignments of error.

in reviewing a complaint, the nature of the claims asserted against the insured controls, rather than the labels assigned by the plaintiff. *See Bruceton Bank v. U.S. Fid. & Guar. Ins. Co.*, 199 W. Va. 548, 553-55, 486 S.E.2d 19, 24-26 (1997).

In *Bruceton Bank*, the SCAWV analyzed an insurer's duty to defend an insured against claims of breach of contract, bad faith, fraudulent misrepresentation, negligence, constructive fraud, promissory estoppel, and discrimination. *See id.* at 549, 486 S.E.2d at 20. Having concluded that breach of contract claims were not covered under the terms of the policy, the SCAWV rejected the insured's contention that the negligence and promissory estoppel claims triggered a duty to defend, reasoning "the remaining allegations of the underlying complaint [do not] alter the basic nature of the [underlying] action as one grounded essentially upon breach of contract." *Id.* at 554, 486 S.E.2d at 25. The SCAWV determined that the damages sought against the insured had their origin in contract and that the negligence and promissory estoppel claims, despite their labels, were barred by the policy's exclusion for intentional acts of the insured. *Id.*

In analyzing an insurer's duty to defend an insured against claims of sexual misconduct, the SCAWV held that "[t]he inclusion of negligence-type allegations in a complaint that is at its essence a sexual [misconduct] claim will not prevent the operation of an 'intentional acts' exclusion contained in an insurance liability policy which is defined as excluding 'bodily injury' 'expected or intended from the standpoint of the insured.'" Syl. Pt. 4, *Smith v. Animal Urgent Care, Inc.*, 208 W. Va. 664, 542 S.E.2d 827 (2000); *see*

3

*also* Syl., *Horace Mann Ins. Co. v. Leeber*, 180 W. Va. 375, 376 S.E.2d 581 (1988) (finding no duty to defend against sexual misconduct claims where policy contained intentional acts exclusion). When determining whether a complaint is "at its essence" a sexual misconduct claim, the SCAWV has considered whether the "primary allegations" allege sexual misconduct. *Stanley*, 216 W. Va. at 53, 602 S.E.2d at 496.

The majority formulates a new standard for courts to apply these principles, explaining that negligence allegations in a complaint otherwise alleging intentional sexual misconduct against an insured are sufficient to trigger a duty to defend if they state claims that would survive a motion to dismiss. I disagree with the introduction of this standard for several reasons. First, it is not supported by the caselaw. Second, this standard encourages gamesmanship and creative pleading. Under West Virginia's notice pleading, "the standard for assessing a motion to dismiss requires the circuit court to view the complaint in the light most favorable to the plaintiff and take all allegations as true." *McKnight v. Bd. of Governors of Glenville State Univ.*, 250 W. Va. 368, ___, 902 S.E.2d 917, 923 (Ct. App. 2024). Given this liberal standard, a plaintiff suing an insured for intentional acts not covered by their policy could trigger an insurer's duty to defend simply by including a basic negligence count in their complaint.

Third, in analyzing the underlying complaints in this case, the majority does not actually analyze the complaints under West Virginia's liberal notice pleading standards. Instead, the majority states that Mutual had the duty to defend "plausible" claims of

4

medical malpractice. However, unlike in federal court, a plaintiff in West Virginia court does not have to state a "plausible" claim to survive a motion to dismiss. *See Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 521 n.4, 854 S.E.2d 870, 883 n.4 (2020). Moreover, the majority does not limit its consideration to the facial plausibility of the claims in the underlying complaints. Instead, the majority considers Matulis' proposed defense to some of the claims and expert witness opinions in support of his defense, effectively converting their consideration to a summary judgment standard. *See Shaffer v. Charleston Area Med. Ctr., Inc.*, 199 W. Va. 428, 433, 485 S.E.2d 12, 17 (1997) (recognizing that where a court considers evidence at the motion to dismiss stage, it should convert the motion into a summary judgment motion).

For these reasons, I would not introduce the standard set forth in the majority opinion. In determining if allegations in a complaint against an insured trigger an insurer's duty to defend, I would continue to look at the nature and essence of those claims, rather than their labels.

In the Policy at issue, Mutual provided that it would not pay for or defend "any claim or suit arising out of an intentional tort, dishonest, reckless or malicious act, or breach of contract except as otherwise provided in this policy" or "liability arising out of sexual acts or sexual activities whether under the guise of professional services or not, on the part of any insured." However, despite the similarity of the allegations in all fourteen underlying cases, the majority finds that Mutual had no duty to defend Matulis against

5

eight complaints and that it had a duty to defend against the other six. Crediting the defense Matulis proffered below that he sometimes performed digital vaginal examinations ("DVEs") during colonoscopy procedures and the expert opinions that DVEs can be legitimate and necessary during colonoscopies, the majority concludes that, where a plaintiff properly alleged a medical malpractice claim based on Matulis' performing a DVE during a colonoscopy, Mutual was required to provide him with a defense.

However, review of each of the five complaints (and in L.B.'s case, the notice of claim) for which the majority finds a duty to defend demonstrates that, regardless of the labels used in the complaint, Mutual had no duty to defend Matulis. Although some of the plaintiffs include a count in their complaint alleging that Matulis' intentional and nonconsensual touching of their intimate areas may have been medical malpractice, the nature of the injuries allegedly suffered demonstrates that the nature and essence of these complaints are intentionally tortious sexual misconduct. These complaints are foreign to the risk of injuries insured against by the Policy, and Mutual had no duty to defend.

In an MPLA claim, a plaintiff must demonstrate not only that "[t]he health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances," but also that "[s]uch failure was a proximate cause of the injury or death." W. Va. Code § 55-7B-3(a) (2003). As the SCAWV has recognized, "[i]n a malpractice case, the plaintiff must not only prove

6

negligence but must also show that such negligence was the proximate cause of the injury."

Syl. Pt. 4, *Short v. Appalachian OH-9, Inc.*, 203 W. Va. 246, 507 S.E.2d 124 (1998).

Despite their inclusion of malpractice counts in their complaints, the plaintiffs have not alleged separate injuries proximately caused by Matulis' alleged malpractice.[2] Of course, when viewing Matulis' alleged conduct as intentionally tortious sexual misconduct, each plaintiff's injury is clear: Matulis' intentional harmful, unwanted contact of her intimate areas, and any resultant harm. *See McKenzie v. Sevier*, 244 W. Va. 416, 425, 854 S.E.2d 236, 245 (2020) ("[A]n actor is subject to liability to another for battery if (a) he acts *intending* to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results.") (citations and quotations omitted). In contrast, when Matulis' conduct is recast as a legitimate medical examination that was merely negligent because it was performed without informed consent, the examination is the breach of the standard of care, rather than the injury. As the SCAWV has explained, in an MPLA claim, the plaintiff must demonstrate a breach of the standard of care *and* an injury proximately caused by that breach. *See Arbogast v. Mid-Ohio Valley*

---

[2] Several of the six plaintiffs discussed below allege generally that Matulis' alleged breaches of the standard of care caused them damages or harm. *See, e.g.*, B.D. Complaint ¶¶ 35, 80; T.W. Amended Complaint ¶ 21; R.K. Complaint ¶ 18. Regardless, they do not identify an injury, separate from Matulis' conduct itself, that was proximately caused by his conduct if that conduct is construed as a legitimate medical examination. For instance, there is no claim that the purported "examination" failed to diagnose a health concern or that the examination physically injured a patient separate and apart from the complete lack of consent to the "examination."

*Med. Corp.*, 214 W. Va. 356, 361, 589 S.E.2d 498, 503 (2003) (per curiam) ("Merely finding that the evidence established that [the health care provider] violated the standard of care for extracting blood *does not alone* impose liability . . . .").

Plaintiffs' failure to allege a separate injury proximately caused by Matulis' breach of the standard of care demonstrates that the malpractice counts in their complaints are recharacterizations of their intentional tort claims. Regardless of their inclusion of negligence or malpractice counts, or their characterization of Matulis' touching of their intimate areas as an "examination," the injury plaintiffs allege is that he intentionally and inappropriately touched in them in those areas, not that he performed a legitimate medical procedure that proximately caused a separate injury. Because the injuries plaintiffs allege are intentional tort injuries, their allegations of negligence and malpractice do not transform the essence of their complaints. *Cf. Bruceton Bank*, 199 W. Va. at 554, 486 S.E.2d at 25 (finding that, despite negligence claim, the nature of the complaint was breach of contract in part because "the damages claimed by the [underlying plaintiff] more appropriately had their origin in contract, rather than in tort").

The nature of the injuries alleged alone demonstrates that the nature and essence of the five complaints and L.B.'s notice of claim are claims for intentionally tortious sexual misconduct, and that Mutual had no duty to defend Matulis against any of them. However, I will also briefly address specific allegations in each complaint that further demonstrate the nature and essence of plaintiffs' claims.

### 1. B.D. v. Matulis, Civil Action No. 18-C-15

B.D. alleges that during her colonoscopy procedure on January 8, 2016, Matulis "placed his fingers in and about the Plaintiff's vaginal area without the knowledge or consent of the Plaintiff." B.D. Complaint ¶ 33. She also alleges that Matulis engaged in this "misconduct" with at least six women other than her. *Id.* ¶¶ 15-20, 24-25. In her MPLA claim, B.D. alleges that this conduct constituted various breaches of the standard of care for a reasonably prudent gastroenterologist. B.D. Complaint ¶ 79. However, these allegations are inconsistent with Matulis' defense—and the majority's basis for finding that some plaintiffs stated covered malpractice claims—that he performed legitimate DVEs on some patients during colonoscopies. Contrarily, far from alleging that Matulis' conduct may have simply been a legitimate but negligent DVE, B.D. specifically alleges that Matulis acted outside of his own area of practice and beyond his training and expertise. *See* B.D. Complaint ¶ 79. Therefore, by the majority's own reasoning, these allegations do not trigger a duty to defend.

### 2. A.H. and Fleming v. Matulis, Civil Action No. 18-C-176 (Class Action)

A.H. and Fleming allege that they represent a class of Matulis' former patients who underwent colonoscopies or sigmoidoscopies between 2010 and 2016. A.H./Fleming Complaint ¶ 44. A.H. and Fleming allege that, during the relevant period, it was Matulis' practice to perform nonconsensual vaginal and breast examinations on his patients. *See id.* ¶¶ 14-16. Notably, A.H. and Fleming allege that they are unaware if they or any class members were actually subjected to any of the alleged conduct. *Id.* ¶ 32.

A.H. and Fleming do not allege that Matulis performed a legitimate DVE for which he should have obtained informed consent; they allege he *might* have performed a DVE *or* a breast examination. A.H./Fleming Complaint ¶¶ 12, 32. Moreover, because they do not allege that a DVE occurred, they have not alleged that any DVE was the proximate cause of an injury separate from the breach of the standard of care itself, as required for an MPLA claim. *See* W. Va. Code § 55-7B-3(a); *Short*, 203 W. Va. at 252-53, 507 S.E.2d at 130-31. That these plaintiffs do not know which form of nonconsensual touching might have occurred underscores that their alleged injury is the harmful contact, not an injury proximately caused by a legitimate but negligent medical procedure.

3. **Jane Doe 1 and Jane Doe 2, Civil Action No. 16-C-1723 (Class Action)**

Jane Does 1 and 2 ("Jane Does") allege that they represent a class of Matulis' former patients who underwent colonoscopies or sigmoidoscopies between 2010 and 2016. *See* Jane Does Complaint ¶ 104. The Jane Does' allegations are similar to A.H. and Fleming's in that the Jane Does are unaware if Matulis touched their intimate areas during their colonoscopies, but they allege concern that he may have. *See id.* ¶¶ 21-22, 43, 112. Moreover, beyond simply failing to allege an injury caused by Matulis' alleged malpractice, the Jane Does affirmatively disclaim one, stating that they "do not allege a physical injury sustained during their colonoscopy." Jane Does Complaint ¶ 112. The Jane Does also specifically allege that the "allegations [of sexual assault] against Dr. Matulis were true." Jane Does Complaint ¶ 20. As the majority recognizes, where a plaintiff's

10

allegations "assume that Matulis did commit sexual misconduct, either against [the plaintiff] or others . . . her allegations arise from sexual conduct."

### 4. R.K. v. Matulis, Civil Action No. 17-C-1579

R.K. alleges that, during a consultation for acute pancreatitis, "Matulis performed a vaginal examination that was not medically indicated . . . without [R.K.]'s consent." R.K. Complaint ¶¶ 7-9. R.K. characterizes Matulis' actions as "misconduct" that was "intentional, willful, wanton, and reckless." *Id.* ¶¶ 13-14. R.K. also alleges a negligence count, which the majority concludes is sufficient to trigger Mutual's duty to defend.

Matulis claims that he had a "practice of performing limited digital vaginal examinations (DVEs) during colonoscopy procedures." Matulis Brief at 1, 4. Both his supporting experts opined that a DVE could be within the standard of care during a colonoscopy. Notably, R.K. does not allege that Matulis performed a colonoscopy during the visit at issue. Rather, she underwent treatment for acute pancreatitis. *See* R.K. Complaint ¶ 7. Neither Matulis nor the majority contend that a DVE is within the standard of care during an evaluation for acute pancreatitis. Therefore, even under the theory that MPLA claims based on Matulis' performing a DVE during a colonoscopy triggered Mutual's duty to defend, R.K.'s allegations do not put forth such a claim.

11

### 5. **T.W. v. Matulis, Civil Action No. 16-C-497**

In her initial complaint, T.W. alleges that during a colonoscopy procedure, "Matulis placed his hands inside her hospital gown and groped her breasts" and "used his fingers to repeatedly penetrate her vagina." *See* T.W. Complaint ¶¶ 6-7. T.W. specifically characterizes this as "sexual assault," *id.* ¶ 8, and raises claims against Matulis for battery and outrage. In her amended complaint, T.W. alleges the same factual conduct. *See* T.W. Amended Complaint ¶¶ 8-9. However, she removes the references to sexual assault, and adds references to negligence, including that Matulis "was negligent, reckless and committed a battery upon [T.W.]" *See id.* ¶ 12.

Although the majority does not analyze T.W.'s initial complaint, based on their analysis of the complaints for which they find no duty to defend, they likely would have determined that Mutual had no duty to defend Matulis against that version of the complaint. Indeed, in finding that Mutual had a duty to defend against the amended complaint, the majority emphasizes that the complaint did not reference sexual assault. I believe that this clearly demonstrates the flaw in the majority's standard. Mutual contracted to limit its duty to defend claims based on certain conduct, not words. The conduct T.W. alleges in her amended complaint has not changed; therefore, the nature and essence of the claims have not changed.

### 6. **L.B. Notice of Claim**[3]

In the certificate of merit included with her notice of claim, L.B. alleges that Matulis "breached the standard of care . . . by negligently failing to conduct a proper colonoscopy exam. [L.B.] was sexually assaulted by Dr. Matulis during her colonoscopy exam resulting in injury to her," and that he "[was] otherwise negligent." L.B. Certificate of Merit ¶ 6. Despite her use of negligence language, the only concrete conduct that L.B. identifies as a "breach" is that "she was sexually assaulted." As the majority recognizes, where a plaintiff's allegations "assume that Matulis did commit sexual misconduct, either against [the plaintiff] or others . . . her allegations arise from sexual conduct." Moreover, the SCAWV has recognized that simply calling sexual misconduct negligence does not trigger a duty to defend. *See Stanley*, 216 W. Va. at 53, 602 S.E.2d at 496.

## II.  Conclusion

Because I conclude that Mutual had no duty to defend Matulis against any of the underlying complaints, I believe it was unnecessary to address Mutual's assignments of error on their merits, because the duty to defend would have been dispositive of those issues. However, in light of the majority's need to reach those issues based on their partial affirmance of the May 4, 2021, order, I agree with the majority's reasoning and judgment

---

[3] Although L.B. never filed a complaint against Matulis, the majority analyzes the certificate of merit included with her notice of claim in the same manner as a complaint. Although I do not believe it is clear under West Virginia law that a notice of claim and certificate of merit can trigger a duty to defend against a lawsuit before a complaint is filed, for the purposes of this separate opinion I will analyze her notice of claim and certificate of merit like a complaint.

13

on each of Mutual's additional assignments of error. Accordingly, for the foregoing reasons, I respectfully concur in part and dissent in part from the majority opinion.