602 S.E.2d 483

**WEST VIRGINIA FIRE & CASUALTY COMPANY, Plaintiff Below, Appellee,**

v.

**Cass–Sandra Marko Gene STANLEY, Sandra Stanley, Roxanna Holcomb, Glen Stanley, Helen Stanley and Jesse Stanley, Defendants Below.**

**Cass–Sandra Marko Gene Stanley and Sandra Stanley, Defendants Below, Appellants**

and

**West Virginia Fire & Casualty Company, Plaintiff Below, Appellee,**

v.

**Cass–Sandra Marko Gene Stanley, Sandra Stanley, Roxanna Holcomb, Glen Stanley, Helen Stanley and Jesse Stanley, Defendants Below**

**Gene Stanley, Helen Stanley and Jesse Stanley, Defendants Below, Appellants.**

**No. 31230, 31532.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 24, 2004.

Decided May 21, 2004.

Concurring Opinion of Justice Starcher July 8, 2004.

44

Clarksburg, West Virginia, Attorneys for West Virginia Fire & Casualty Company.

Gary S. Wigal, Esq., Gianola, Barnum & Wigal, Morgantown, West Virginia, Attorney for Cass–Sandra Marko Gene Stanley and Sandra Stanley.

Raymond G. Musgrave, Esq., Musgrave Law Office, Point Pleasant, West Virginia, Attorney for Glen Stanley, Helen Stanley and Jesse Stanley.

MAYNARD, Chief Justice:

In this appeal from the Circuit Court of Mason County, we are asked to review an order granting summary judgment to an insurance company in a declaratory judgment action. Specifically, the circuit court found that the insurance company has no duty to its insureds in an action arising from the alleged sexual misconduct of an insured minor because coverage is precluded by the "accident" requirement and "intentional-injury" exclusion in the pertinent insurance policy. For the reasons that follow, we affirm.

## I.

### FACTS

Glen and Helen Stanley, defendants below in the underlying sexual abuse lawsuit, purchased a homeowner's insurance policy [1] issued by West Virginia Fire & Casualty Company (hereafter "W.Va. Fire & Casualty") with an effective policy period of February 7, 1987, to February 7, 1994. They also purchased a Personal Catastrophe Liability Supplement which was in effect from February 7, 1987, to February 7, 1992.

1. This is identified by the parties as a Personal Security Policy Plus, policy number 4391618.

2. Also, in February 1999, Roxanna Holcomb, the daughter of Glen and Helen Stanley, filed a civil action against her parents in which she alleged that she was sexually abused and sexually exploited by her father, Glen Stanley, over an extended period of time with the full knowledge of her mother, Helen Stanley. In the underlying declaratory judgment action, W.Va. Fire & Casualty also sought a determination of its rights, liabilities, and obligations in Roxanna Holcomb's action. Ms. Holcomb did not file an appeal to the circuit court's decision, and her claims are not at issue in this appeal.

The primary policy contained the following provisions in the Liability Coverage section:

We will pay any amount up to your Limit of Coverage for which a **Covered Person** becomes legally liable as a result of **bodily injury** or **property damage** that is caused by an accident. Continuous or repeated exposure to the same conditions is considered a single accident. We will not cover **bodily injury** or **property damage** that is expected or intended by a **Covered Person**.

By amendment effective February 7, 1993, specifically excluded from coverage was liability "[a]rising out of any sexual molestation, corporal punishment, or physical or mental abuse." Finally, the Personal Catastrophe Liability Supplement incorporated all of the above-stated provisions of the primary policy and added exclusions from coverage "for any fines, penalties, punitive or exemplary damages."

On or about December 30, 1998, Cass–Sandra Marko Gene Stanley (hereafter "Cass–Sandra Stanley") and her mother, Sandra Stanley, filed a complaint in the Circuit Court of Mason County against Glen and Helen Stanley and their son Jesse Stanley.[2] Glen and Helen Stanley are the paternal grandparents of Cass–Sandra, and Jesse Stanley is her uncle. The complaint alleges that Cass–Sandra Stanley was "sexually abused and sexually exploited" by Jesse Stanley from the time she was seven years of age [3] until she was sixteen years of age with the full knowledge of Glen and Helen Stanley who intentionally failed to disclose the acts to Cass–Sandra Stanley's parents or law enforcement authorities. The complaint fur-

3. It is not clear from the record or the briefs exactly when the sexual abuse allegedly began. The complaint states that Cass–Sandra Stanley was born on May 8, 1980, and the alleged abuse began when she was seven years of age. However, Cass–Sandra testified during a deposition that the alleged abuse began on Easter 1986, when she was six years of age. Further, a footnote of the brief filed by Cass–Sandra and Sandra Stanley explains that Cass–Sandra was not six years of age until May 8, 1987, so that the abuse actually began on Easter Sunday of 1987 which was April 19 of that year.

ther alleges that Glen, Helen, and Jesse Stanley placed Cass–Sandra Stanley under a constant threat of bodily harm, "and she was subjected to threats, intimidation, coercion and acts of violence" to prevent her disclosure of the sexual abuse. In addition, the complaint avers that Sandra Stanley, after she discovered her daughter's sexual abuse, was also subjected to threats, intimidation, coercion, and acts of violence to prevent disclosure of the abuse.

Based on these allegations, Cass–Sandra and Sandra Stanley asserted causes of action for negligence, intentional and negligent infliction of emotional distress, breach of duty in "loco parentis," civil conspiracy, and civil assault against Glen, Helen, and Jesse Stanley; and battery against Jesse Stanley. Sandra Stanley also asserted a claim for loss of services, comfort, and society against Glen, Helen, and Jesse Stanley. In their answer to the complaint, Glen, Helen, and Jesse Stanley denied the allegations in the complaint.

In deposition testimony, Cass–Sandra Stanley stated that the alleged sexual abuse began on Easter Sunday of 1986 when she was six years old[4] and Jesse Stanley was eleven or twelve, and that it occurred two or three times a week when she and her parents visited Glen and Helen Stanley's house. She further testified that the first time that Jesse Stanley forced her to engage in vaginal intercourse with him she repeatedly screamed. Shortly thereafter, Jesse Stanley forced her to have anal sex during which she kicked and cried.

Based on its insurance policy with Glen and Helen Stanley, W.Va. Fire & Casualty initially assumed the defense of Glen, Helen, and Jesse Stanley subject to a reservation of its rights. However, it thereafter became the position of W.Va. Fire & Casualty that the claims set forth in the sexual abuse complaint are not covered by its policy, and that it therefore had no duty to indemnify or further defend. Accordingly, it filed a complaint for declaratory judgment in the Circuit Court of Mason County seeking a declaration of its rights, liabilities, and obligations in the sexual abuse action. It also filed a motion for declaratory and summary judgment alleging that it had no duty to defend nor indemnify the defendants.

The circuit court granted W.Va. Fire & Casualty's motion for summary judgment in its thorough and well-reasoned April 18, 2002, order in which it concluded, as a matter of law, in part, as follows:

5. West Virginia Fire is entitled to summary judgment as to Counts I, IV, V, VI, VII and VIII of Cass–Sandra Stanley's Complaint under the insuring clause and intentional acts exclusion of the pertinent insuring agreements, as well as the fact that claims are derivative of excluded sexual abuse claims.

6. West Virginia Fire is entitled to summary judgment as to Counts II and III of Cass–Sandra Stanley's Complaint as intent to cause injury is inferred as a matter of law under *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988).

7. The insuring clause and the intentional acts exclusion contained within the Stanley insurance policy is not ambiguous.

8. Under the provisions of the pertinent insurance agreements ... the causes of action contained within Cass–Sandra Stanley's complaint ... [do not] constitute an "accident" as required for recovery under the policy and West Virginia Fire is entitled to summary judgment on the same.

9. The term "accident" as contained within the Stanley insurance policy is not ambiguous.

10. The intentional acts exclusion and the "accident" requirement of the pertinent insurance policy preclude coverage for all other acts and/or omissions contained within the underlying suits, since the other claims are derivative of the excluded sexual misconduct and are therefore excluded from coverage. *See Smith v. Animal Urgent Care*, 208 W.Va. 664, 542 S.E.2d 827 (2000).

11. The negligence claims of the underlying plaintiffs [and] Sandra Stanley ... arise out of, and are therefore derivative of, the excluded sexual misconduct and are

---

4. *See* footnote 3 *supra.*

therefore excluded from coverage under the pertinent insurance policy as a matter of law. *See Smith v. Animal Urgent Care,* 208 W.Va. 664, 542 S.E.2d 827 (2000).

12. The efficient proximate cause of all of the injuries which are the subject of the underlying suits was excluded misconduct, entitling West Virginia Fire to summary judgment regarding the same. *See Murray v. State Farm Fire and Casualty Company,* 203 W.Va. 477, 509 S.E.2d 1 (1998).

\* \* \* \* \* \*

14. The Personal Catastrophe Liability Supplement (umbrella policy) of Glen and Helen Stanley contained an exclusion for "any fines, penalties, punitive or exemplary damages," punitive damages being sought from the Stanley defendants[.]

15. West Virginia Fire is entitled to summary judgment with respect to the underlying plaintiffs' claims for punitive damages under the umbrella policy as the underlying plaintiffs' claims for punitive damages are specifically excluded from said insurance coverage by the terms of the pertinent insurance agreement and West Virginia law.

16. To the extent that the underlying plaintiffs allege conduct that happened outside the primary policy period, the underlying plaintiffs' claims are not covered by the pertinent insurance policy and West Virginia Fire is entitled to summary judgment on this issue.

\* \* \* \* \* \*

20. West Virginia Fire is entitled to summary judgment as to Count IX of Cass–Sandra Stanley's Complaint as Sandra Stanley's Claims are wholly derivative of Cass–Sandra's claims and precluded from coverage under the insuring clause and intentional acts exclusion of the insurance policy. *See Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995).

21. There is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains an "intentional-injury" exclusion. *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988).

Cass–Sandra and Sandra Stanley, and Glen, Helen, and Jesse Stanley, now appeal this order.

## II.

## STANDARD OF REVIEW

As this Court often has set forth, we apply a plenary review to a circuit court's entry of summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Also, we are required herein to review the terms of an insurance policy. Generally, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syllabus Point 1, *Tennant v. Smallwood,* 211 W.Va. 703, 568 S.E.2d 10 (2002). "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syllabus Point 2, *Riffe v. Home Finders Associates, Inc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999).

When this Court interprets an insurance policy, the "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syllabus Point 1, *Soliva v. Shand, Morahan & Co., Inc.,* 176 W.Va. 430, 345 S.E.2d 33 (1986). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970). However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syllabus Point 1, *Prete v. Merchants Property Ins. Co.,* 159 W.Va. 508, 223 S.E.2d 441 (1976). Finally, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strict-

ly construed against the insurance company and in favor of the insured." Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons,* 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1998). With these standards in mind, we now turn to the issues before us.

## III.

## DISCUSSION

### 1. Appeal Number 31532

First, we address the arguments raised in appeal number 31532 by the insureds under the subject insurance policy, Glen, Helen, and Jesse Stanley. The insureds assert, first, that the circuit court erred by depriving them of a property right without due process of law. According to the insureds, their insurance policy with W.Va. Fire & Casualty is a property right. Because no evidentiary hearing was held to determine if, in fact, there actually had been sexual abuse by Jesse Stanley, this personal property right was taken without due process of law. Second, the insureds argue that summary judgment was improper because numerous genuine issues of material fact exist such as whether there was in fact sexual abuse. Third, the insureds opine that ambiguity in the term "accident" in the policy precludes summary judgment. Finally, the insureds contend that the circuit court erred in assuming, absent a trial, that sexual abuse was committed.

 We find no merit to any of these arguments. As stated by W.Va. Fire & Casualty, the insured's position is based on the fatally flawed notion that in order for the trial court to decide coverage, it must adjudicate the underlying facts. This simply is not true under our law. As a general rule, "included in the consideration of whether [an] insurer has a duty to defend is whether the allegations in the complaint ... are reasonably susceptible of an interpretation that the claim may be covered by the terms of the

insurance polic[y]." Syllabus Point 3, in part, *Bruceton Bank v. U.S. Fid. and Guar. Ins.,* 199 W.Va. 548, 486 S.E.2d 19 (1997). *See also Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986) ("an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." (Citations omitted.)); *Corder v. William W. Smith Excavating Co.,* 210 W.Va. 110, 113, 556 S.E.2d 77, 80 (2001) ("in determining whether an insurer has a duty to defend, the determination is made based upon the allegations of the complaint.").

> In other words, an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

*State Auto. Ins. v. Alpha Engineering Serv.,* 208 W.Va. 713, 716, 542 S.E.2d 876, 879 (2000) (citations omitted). An evidentiary hearing for the purpose of determining the truth or falsity of the allegations in the complaint below was not necessary in order to determine whether there is coverage. The dispositive question is answered by looking at the allegations in Cass–Sandra and Sandra Stanley's complaint to determine whether the allegations are reasonably susceptible of an interpretation that the claim may be covered. This the circuit court did. For the same reason, whether there was in fact sexual abuse is not material to answering the question before the circuit court, and does not preclude summary judgment. Finally, contrary to the insureds' assertion, the circuit court did not presume that sexual abuse was committed. Rather, it looked to the allegations in the complaint. Therefore, we reject insureds' arguments in appeal number 31532.[5]

---

5. We will address the insureds' claim that ambiguity in the policy term "accident" precludes summary judgment later in the opinion.

### 2. Appeal Number 31230

#### A. Preliminary Issues

At the outset, a few issues in this appeal can be disposed of quickly. First, in the underlying sexual abuse complaint, Appellants Cass–Sandra and Sandra Stanley aver that the alleged sexual abuse took place from the time Cass–Sandra Stanley was seven years old until she was sixteen years old. In her deposition, Cass–Sandra testified that the alleged sexual abuse began on Easter Sunday of 1986 when she was six years of age and continued until she was thirteen years of age. The undisputed facts indicate that the primary policy at issue was in effect from February 7, 1987, to February 7, 1994, while the personal catastrophe liability supplement was in effect from February 7, 1987, to February 7, 1992. It is obvious, thus, that Cass–Sandra and Sandra Stanley have alleged wrongful conduct some of which occurred outside of the time period in which the insurance policy or policies at issue were in effect. Therefore, we agree with the circuit court that "[t]o the extent that the underlying plaintiffs allege conduct that happened outside the primary policy period, the underlying plaintiffs' claims are not covered by the pertinent insurance policy and West Virginia Fire is entitled to summary judgment on this issue."

Second, Cass–Sandra and Sandra Stanley ask for punitive damages in their sexual abuse complaint. The personal catastrophe liability supplement, in effect from February 7, 1987, to February 7, 1992, expressly excludes coverage "for any fines, penalties, punitive or exemplary damages." This exclusion of coverage for punitive damages is unambiguous. Therefore, we agree with the circuit court that W.Va. Fire & Casualty is not responsible for punitive damages arising from alleged acts that occurred during the period in which the personal catastrophe liability supplement was in effect.

Third, by amendment effective February 7, 1993, the primary policy specifically excludes from coverage any liability "[a]rising out of any sexual molestation ... physical or mental abuse." This provision is unambiguous. Therefore, to the extent that alleged acts of sexual, mental, or physical abuse occurred after February 7, 1993, there is no coverage for such acts, and the circuit court properly granted summary judgment denying coverage for claims arising from such acts.

#### B. The Insurance Policy's Coverage of an "Accident"

Having settled these initial issues, we now address the challenges to the circuit court's summary judgment order raised by Cass–Sandra and Sandra Stanley, plaintiffs in the sexual abuse complaint and Appellants in appeal number 31230. First, Cass–Sandra and Sandra Stanley contend that the term "accident" in the insurance policy is ambiguous because the term "accident" is nowhere defined in the policy, is of doubtful meaning, and reasonable minds might be uncertain or disagree as to its meaning. Thus, because there is a question of fact concerning the meaning of the term "accident," summary judgment was improper. W.Va. Fire & Casualty responds that the term "accident" is not ambiguous, and that sexual abuse cannot be considered an "accident" under the policy.

This Court considered very similar "accident" language in *Dotts v. Taressa J.A.*, 182 W.Va. 586, 390 S.E.2d 568 (1990). The business and auto liability insurance portion of the policy at issue in that case obligated the insurance company to "pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered auto." 182 W.Va. at 587, 390 S.E.2d at 569. We noted that "[t]he term 'accident' is defined in the policy as follows: 'Accident includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the *insured neither expected or intended.*'" *Id.* The Court then explained:

> There is a rather lengthy annotation at 31 A.L.R.4th 957 (1984), collecting cases that deal with policy language excluding coverage for injuries intended or expected by the insured. The annotator points out that this language attempted to clarify and replace the intentional injury exclusion by

limiting the term "accident" for coverage purposes to those actions of the insured that were neither expected nor intended. This language was also designed to focus the evaluation of the event on the perspective of the insured rather than on that of the injured victim. Annot., 31 A.L.R.4th at 972. *See Patrons–Oxford Mut. Ins. Co. v. Dodge,* 426 A.2d 888, 891 (Me.1981).

There does appear to be general agreement that this language is the equivalent of the intentional tort exclusion. Consequently, we conclude that language in a motor vehicle liability policy defining "accident" to include "bodily injury or property damage the insured neither expected or intended" is generally designed to exclude coverage for an intentional tort such as sexual assault.

182 W.Va. at 588—89, 390 S.E.2d at 570–71 (footnote omitted).

More recently, we addressed the meaning of the term "accident" in an insurance policy in *State Bancorp, Inc. v. U.S. Fidelity and Guar.,* 199 W.Va. 99, 483 S.E.2d 228 (1997). In that case, the insureds' policies obligated the insurers to pay damages because of "bodily injury" or "property damage" which was caused by an "occurrence" during the policy period. 199 W.Va. at 103, 483 S.E.2d at 232. An "occurrence was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The question before the Court was whether the allegations in the subject complaint were reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. The complaint alleged the tort of outrage, breach of contract, the tort of civil conspiracy, and violation of state banking laws.

Even though the word "accident" was not defined in the policies, we noted that,

Ordinarily, "accident" is defined as "an event occurring by chance or arising from unknown causes[.]" *Webster's New Collegiate Dictionary* 7 (1981). As one court has explained,

[a]n 'accident' generally means an unusual, unexpected and unforeseen event.... An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.... To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

*Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group,* 37 Wash.App. 621, 681 P.2d 875, 878 (1984) (citations omitted). *See also Travelers Ins. Companies v. P.C. Quote, Inc.,* 211 Ill.App.3d 719, 156 Ill.Dec. 138, 143, 570 N.E.2d 614, 619 (1991) ("An accident is defined as 'an unforeseen occurrence of untoward or disastrous character' or 'an undesigned sudden or unexpected event.'" (citation omitted)); *Arco Industries Corp. v. American Motorists Ins. Co.,* 448 Mich. 395, 531 N.W.2d 168, 173 (1995).

199 W.Va. at 105, 483 S.E.2d at 234. After applying this definition of "accident" to the allegations in the complaint, we concluded that "a breach of contract which causes 'bodily injury' or 'property damage' is not an event that occurs by chance or arises from unknown causes, and, therefore, is not an 'occurrence[.]' " *Id.*

▮▮▮▮ We do not believe that the term "accident" in the instant policy is ambiguous. The common and everyday meaning of "accident" is a chance event or event arising from unknown causes. This meaning does not include the kinds of deliberate acts alleged in the complaint. The crux of the complaint is that Jesse Stanley deliberately sexually assaulted Cass–Sandra Stanley. Such a deliberate act is not covered by the subject policy because it does not constitute an "accident." Cass–Sandra and Sandra Stanley also allege the intentional torts of outrage, civil conspiracy, and civil assault. These too are deliberate acts which do not fall within the meaning of the term "accident." We conclude, therefore, that the allegations of deliberate acts committed by Glen, Helen, and Jesse Stanley are not covered by the subject insurance policy. Further, although Cass–Sandra and Sandra Stanley also assert allegations of negligence in their complaint, for the reasons to be discussed *infra*, we do not believe that these allegations bring the claims of Cass–

Sandra and Sandra Stanley under the policy's coverage provision.

### C. The Insurance Policy's Intentional Acts Exclusion

■ As noted above, this Court also has characterized the "accident" language in the subject policy as the equivalent of an intentional tort/acts exclusion. For the reasons that follow, we also find that the allegations in Cass–Sandra and Sandra Stanley's complaint are precluded by the intentional acts exclusion. "Under an intentional acts exclusion, a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting damage." Syllabus Point 7, *Farmers and Mechanics Mut. Ins. Co. v. Cook*, 210 W.Va. 394, 557 S.E.2d 801 (2001).

In *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988), this Court held in the sole syllabus point,

There is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called "intentional injury" exclusion. In such a case the intent of an insured to cause some injury will be inferred as a matter of law.

The facts of *Leeber* concerned a junior high school teacher who admitted to sexually abusing one of his students. W.Va. Fire & Casualty adamantly argues that *Leeber* applies to the facts of this case, even though Jesse Stanley was a minor when he allegedly committed the complained of acts. Cass–Sandra and Sandra Stanley vociferously respond that *Leeber's* inferred intent rule should not apply to minors. Both sides cite cases from other jurisdictions to support their respective positions, and our own research shows that courts are roughly evenly divided on this issue. *See Allstate Ins. Co. v. Steele*, 74 F.3d 878 (8th Cir.1996) (inferring intent to injure to 16 year old); *Allstate Ins. Co. v. Bailey*, 723 F.Supp. 665 (M.D.Fla.1989) (inferring intent to injure to 15 year old); *Swentkowski v. Dawson*, 881 P.2d 437 (Colo. Ct.App.1994) (finding adjudication of delinquency sufficient to establish conclusive pre-

sumption of intent when intent is element of offense); *Allstate Ins. Co. v. Roelfs*, 698 F.Supp. 815 (D.Alaska 1987) (holding intention to cause injury is inferred as matter of law from nature of acts committed); *B.B. v. Continental Ins. Co.*, 8 F.3d 1288 (8th Cir. 1993) (reasoning that incapacity based on age of actor has no bearing on application of inferred-intent standard because rationale is dependent on act not on actor); *Illinois Farmers Ins. Co. v. Judith G.*, 379 N.W.2d 638 (Minn.Ct.App.1986) (finding minor's alleged lack of subjective intent to injure irrelevant); *D.W.H. v. Steele*, 512 N.W.2d 586 (Minn.1994) (concluding that in cases involving nonconsensual sexual contact, intent to harm inferred as matter of law and without regard to insured's subjective view). *But see Allstate Ins. Co. v. Patterson*, 904 F.Supp. 1270 (D.Utah 1995) (reasoning that if child cannot fully appreciate consequences of sexual activity, that is reason to not hold child perpetrator to same standard as adult); *Allstate Ins. Co. v. Jack S*, 709 F.Supp. 963 (D.Nev.1989) (finding knowledge inferred to an adult may not be properly inferred to child); *Country Mut. Ins. Co. v. Hagan*, 298 Ill.App.3d 495, 232 Ill.Dec. 433, 698 N.E.2d 271 (1998) (reasoning that extending a blanket presumption of intent to all minor perpetrators, will lead to absurd results in some cases); *United Services Automobile Ass'n v. DeValencia*, 190 Ariz. 436, 949 P.2d 525 (App. Ct.1997) (concluding that just as criminal law does not presumptively attribute to minors an adult's understanding of sexual matters, neither should civil law); *Fire Ins. Exchange v. Diehl*, 450 Mich. 678, 545 N.W.2d 602 (Mich.1996) (holding that intent to injure should not be inferred as a matter of law where child is assailant); *Northern Sec. Ins. Co. v. Perron*, 172 Vt. 204, 777 A.2d 151 (Vt.2001) (holding that inferred-intent rule is inapplicable in cases where it is alleged that a minor has sexually abused another minor).

■ After careful consideration of the issue, we now hold that the inferred-intent rule set forth in *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988), applies to minors so that there is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly

caused by the sexual misconduct of an insured who is a minor, when the liability insurance policy contains a so-called "intentional injury/acts" exclusion. In such a case, the intent of the minor insured to cause some injury will be inferred as a matter of law. We believe that this conclusion is compelled by our reasoning in *Leeber*.

> [T]he intent to cause some injury will be *inferred* as a matter of *law* in a sexual misconduct liability insurance case, due to the nature of the act (the alleged sexual contact), which is so *inherently* injurious, or "substantially certain" to result in some injury, that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that *no* harm was intended to result from the act.

*Leeber*, 180 W.Va. at 379, 376 S.E.2d at 585. Because our adoption of the inferred-intent rule in sexual abuse cases is based on the *inherently* injurious nature of the wrongful sexual act, the age of the actor is irrelevant. In other words, the nature of the wrongful act and the injury to the victim are the same, regardless of whether the perpetrator is a minor or an adult. When we apply *Leeber's* inferred-intent rule to Jesse Stanley, his alleged sexual assault is precluded from coverage by the intentional acts exclusion in the policy at issue.

### D. The Nature of the Allegations in the Complaint

■ Even if we did not infer intent to injure to Jesse Stanley, this Court still would conclude that there is no coverage due to the nature of the allegations in Cass–Sandra and Sandra Stanley's complaint. Again, in order to determine whether there is coverage under the policy at issue, we look to the claims set forth in the underlying complaint to see if they, without amendment, may impose liability for risks not precluded by the intentional acts exclusion. A review of the complaint herein indicates that Cass–Sandra and Sandra Stanley specifically allege that Jesse Stanley intended to injure Cass–Sandra Stanley.

Count III of the complaint alleges "Battery Against Defendant Jesse Stanley."

This count avers that Jesse Stanley perpetrated sexual acts upon Cass–Sandra Stanley to which she did not consent, and "[a]t all relevant times Jesse Stanley's actions were intentional, willful, wanton, *malicious,* reckless, and outrageous in their disregard for Cass–Sandra Stanley's rights." (Emphasis added.). This Court previously has defined "malice" as "[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . . A condition of the mind showing a heart regardless of social duty and fatally bent on mischief." *State v. Burgess,* 205 W.Va. 87, 89, 516 S.E.2d 491, 493 (1999) (*quoting Black's Law Dictionary* 956 (6th ed.1990)). We also noted the definition of "malicious" as "[c]haracterized by, or involving, malice; having, or done with, wicked, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." 205 W.Va. at 89, 516 S.E.2d at 493 (*quoting Black's Law Dictionary* 958 (6th ed.1990).

■ Further, the Restatement (Second) of Torts, § 13 (1965), sets out the following elements of the tort of battery:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

Also, this Court held in Syllabus Point 1 of *Funeral Services by Gregory v. Bluefield Hosp.,* 186 W.Va. 424, 413 S.E.2d 79 (1991), *overruled on other grounds by Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993), that "[i]n order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person." Thus, it is clear that Cass–Sandra and Sandra Stanley have alleged, in Count III of their complaint, the type of intentional conduct and intent to commit harm that is specifically excluded by the policy at issue.

■ In Count IV of their complaint, Cass–Sandra and Sandra Stanley allege in-

tentional infliction of emotional distress against Glen, Helen, and Jesse Stanley. Specifically, they claim that "[t]he Defendants' conduct toward the Plaintiffs was intentional, willful, wanton, malicious, outrageous, extreme, and *inflicted with the intent to cause severe mental distress and injury.*" (Emphasis added.). In Syllabus Point 6 of *Harless v. First Nat. Bank In Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982), we set out the elements of an intentional infliction of emotional distress claim as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Clearly, the facts set forth in the complaint, along with the cause of action alleged, constitute the type of intentional conduct either intended or expected to cause harm and is, therefore, excluded by the policy's intentional tort exclusion. This conclusion is consistent with our decision in *State Bancorp* where we found that the tort of outrage cause of action was excluded by policy language that defined "occurrence" as not including actions which are intended by the insured.

Count VII of Cass–Sandra and Sandra Stanley's complaint includes a claim for civil conspiracy against Glen, Helen, and Jesse Stanley wherein it is alleged that the defendants entered into a conspiracy to suppress knowledge of Jesse Stanley's sexual abuse of Cass–Sandra Stanley, including use of threats, intimidation, and violence, with the specific intent of keeping Jesse Stanley's sexual abuse concealed from Cass–Sandra's parents and law enforcement authorities. Cass–Sandra and Sandra Stanley also allege that the defendants' actions were "intentional, willful, wanton, malicious, reckless, and outrageous in their disregard for the Plaintiffs' safety and emotional health." In *State Bancorp,* this Court determined that the facts alleged in the complaint which formed the basis of the tort of civil conspiracy were actions intended by the insured and therefore did not meet the definition of "occurrence" under the policy at issue. We quoted with approval *Fibreboard Corp. v. Hartford Accident and Indemnity Co.,* 16 Cal.App.4th 492, 20 Cal.Rptr.2d 376, 387 (1993), in which

it was opined that "there is a conscious, decisionmaking element that takes civil conspiracies out of the range of behavior encompassed within the meaning of an 'occurrence.'" *State Bancorp,* 199 W.Va. at 106–107, 483 S.E.2d at 235–236. For the same reason, we find that the civil conspiracy is excluded from coverage under the instant policy.

In Count VIII, Cass–Sandra and Sandra Stanley allege civil assault against all of the defendants. It is alleged that "[t]he Defendants acted in numerous ways to place the Plaintiffs in fear of harm with acts which were intended to cause a harmful or offensive contact with the Plaintiffs or to place them in an apprehension of imminent contact[,]" and "[t]he Defendants' acts placed the Plaintiffs in an apprehension of imminent harmful or offensive contact." These allegations conform to the elements for assault stated in the Restatement (Second) of Torts § 21 (1965):

(1) An actor is subject to liability to another for assault if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) the other is thereby put in such imminent apprehension.

It is clear Cass–Sandra and Sandra Stanley can prove assault only by showing that the defendants intended to cause a harmful or offensive contact or an imminent apprehension of such contact. Therefore, their claim for assault is precluded by the intentional acts exclusion in the subject policy.

■ In addition, Cass–Sandra and Sandra Stanleys' complaint alleges negligence against Jesse Stanley. In Count II, negligence is alleged as follows, in part:

17. At all times relevant to his misconduct Jesse Stanley had a duty to act appropriately to control his sexual deviancy and not create an unreasonable danger to Cass–Sandra Stanley and Sandra Stanley.

18. Jesse Stanley knew, or should have known, that his continual sexual deviancy posed an unreasonable risk of physical and psychological harm to Cass–Sandra Stanley and Sandra Stanley.

19. Notwithstanding his duty, Jesse Stanley negligently engaged and continued to engage in the outrageous sexual conduct with Cass–Sandra Stanley.

Also, in Count V, the complaint alleges negligent infliction of emotional distress against, Jesse Stanley.

■■■ This Court, in Syllabus Point 4 of *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 542 S.E.2d 827 (2000), held that,

The inclusion of negligence-type allegations in a complaint that is at its essence a sexual harassment claim will not prevent the operation of an "intentional acts" exclusion contained in an insurance liability policy which is defined as excluding "bodily injury" "expected or intended from the standpoint of the insured.

We believe that the complaint against Jesse Stanley is at its essence a sexual abuse claim in which intentional and intentionally harmful conduct are the primary allegations. In the "General Allegations" portion of the complaint, it is alleged that Jesse Stanley "sexually abused and sexually exploited" Cass–Sandra Stanley against her will for a period of approximately nine years. In her deposition, Cass–Sandra Stanley describes forced and painful vaginal and anal sexual intercourse perpetrated against her by Jesse Stanley during which she screamed, kicked, and cried. Further, as discussed above, the complaint, in several separate counts, alleges intentional torts against Jesse Stanley, almost all of which aver that Jesse Stanley's conduct was "malicious." In light of these facts, we believe it is clear that the gravamen of Cass–Sandra and Sandra Stanley's complaint is that Jesse Stanley intentionally sexually abused and sexually exploited Cass–Sandra Stanley, and that he intended, or at least expected, bodily injury to result. Accordingly, we conclude that any alleged negligent acts against Jesse Stanley are precluded by the intentional acts exclusion.

■■■ Further, Cass–Sandra and Sandra Stanley set forth several negligence causes of actions in their complaint against Glen and Helen Stanley. Count I of the complaint alleges, in part:

9. The Defendants, Glen and Helen Stanley, had constructive and actual knowledge that their son, Jesse Stanley, possessed deviant sexual propensities and was a severe and continuing danger to Cass–Sandra Stanley because of his predatory sexual abuse and exploitation of the minor child.

10. Glen and Helen Stanley were entrusted with the intermittent custody and care of Cass–Sandra Stanley when she was a minor child and their role was that of "loco parentis," temporary guardian and temporary custodian.

11. Glen and Helen Stanley had a special relationship with Cass–Sandra Stanley and had an enhanced duty to Cass–Sandra Stanley and Sandra Stanley to protect Cass–Sandra Stanley from harm when she was in their custody and control. In addition, Glen and Helen Stanley had a duty to control Jesse Stanley's acts when he was a resident of their household.

12. Notwithstanding their enhanced duty to Cass–Sandra Stanley and Sandra Stanley to protect Cass–Sandra Stanley from harm, Glen and Helen Stanley breached their duty because of their constructive and actual knowledge of Jesse Stanley's deviant conduct. They permitted Jesse Stanley to continually sexually abuse and sexually exploit Cass–Sandra Stanley throughout her childhood years.

13. As a direct result of Glen and Helen Stanley's breach of their duty to protect Cass–Sandra Stanley from harm, Cass–Sandra Stanley and Sandra Stanley were injured and damaged by Jesse Stanley's abusive wrongful acts.

14. At all times Glen and Helen Stanley's actions were negligent, willful, reckless and outrageous in their total disregard of Cass–Sandra Stanley's and Sandra Stanley's rights.

Count V alleges negligent infliction of emotional distress against Glen and Helen Stanley as follows, in part:

33. The Defendants' actions as described in this Complaint were a breach of their various duties to care for and protect Cass–Sandra Stanley from harm and a breach of their duty of care to Sandra Stanley.

34. As a direct and proximate result of the Defendants' negligent conduct, the Plaintiffs were injured psychologically and emotionally, which has resulted in Cass–Sandra Stanley and Sandra Stanley suffering severe emotional distress.

Finally, Count VI alleges breach of duty in "loco parentis" against Glen and Helen Stanley as follows, in part:

39. During Glen and Helen Stanley's performance of their duties in "loco parentis," Jesse Stanley, a member of the household, engaged in deviant sexual behavior with the minor child. Glen and Helen Stanley permitted Jesse Stanley to continually sexually abuse Cass–Sandra Stanley for several years.

40. As a result of their acts and failure to act, all of the Defendants breached their duty in "loco parentis."

41. At all relevant times the Defendants' actions were intentional, willful, wanton, malicious, reckless, and outrageous in their disregard for Cass–Sandra Stanley's rights.

After carefully considering the above language, it is apparent to this Court that Cass–Sandra and Sandra Stanley have failed to clearly allege negligent supervision of Jesse Stanley by Glen and Helen Stanley.[6] Although the word "negligent" is used in their allegations against Glen and Helen Stanley, intentional conduct is actually described. For example, the complaint alleges that Glen and Helen Stanley had *actual* knowledge that Jesse possessed deviant sexual propensities and was a continuing danger to Cass–Sandra, but that they *permitted* him to continually sexually abuse and sexually exploit Cass–Sandra throughout her childhood years. Further, the conduct of Glen and Helen Stanley is characterized as willful, wanton, reckless, outrageous, intentional, and malicious. This Court has recognized that,

The usual meaning assigned to "wilful," "wanton" or "reckless," according to taste as to the word used, is that the actor has *intentionally* done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

*Cline v. Joy Mfg. Co.*, 172 W.Va. 769, 772 n. 6, 310 S.E.2d 835, 838 n. 6 (1983), *quoting* W. Prosser, Handbook of the Law of Torts 185 (4th ed.1971). We conclude, therefore, that the alleged "negligent" acts of Glen and Helen Stanley are excluded from coverage by the definition of "accident" and by the intentional acts exclusion in the insurance policy. Under the facts alleged, Glen and Helen Stanley, as competent adults, would have at least *expected* harm to result to Cass–Sandra and Sandra Stanley as a result of their conduct.

■■ The final count in the complaint is Sandra Stanley's claim for loss of services, comfort and society against all of the defendants. This is a derivative claim that fails along with the primary claims in the complaint. "It is inherent in the nature of a derivative claim that the scope of the claim is defined by the injury done to the principal." *Jacoby v. Brinckerhoff*, 250 Conn. 86, 93, 735 A.2d 347, 351 (1999). Also, "[t]he derivative cause of action for loss of consortium cannot provide greater relief than the relief permitted for the primary cause of action." *Lynn v. Allied Corp.*, 41 Ohio App.3d 392, 402, 536 N.E.2d 25, 36 (1987). Therefore, Sandra Stanley's claim for loss of services, comfort, and society is not covered by the insurance policy.

## IV.

### CONCLUSION

In sum, we conclude that W.Va. Fire & Casualty's insurance policy provides no cov-

---

**6.** This Court has held that "[i]f a summary judgment is entered under Rule 56 R.C.P.[,] it is a dismissal with prejudice[,]" Syllabus Point 4, *U.S. Fidelity and Guaranty Co. v. Eades*, 150 W.Va. 238, 144 S.E.2d 703 (1965), *overruled on other grounds by Sprouse v. Clay Communication, Inc.*, 158 W.Va. 427, 211 S.E.2d 674 (1975), so that Cass–Sandra and Sandra Stanley will not have an opportunity to amend their complaint.

erage for the claims presented in Cass–Sandra and Sandra Stanley's complaint because these claims are not within the meaning of "accident" provided in the policy; the claims are precluded by the policy's intentional acts exclusion; and the essential allegations in Cass–Sandra and Sandra Stanley's complaint are of deliberate, intentional, and malicious conduct. Therefore, W.Va. Fire & Casualty has no duty to defend or indemnify these claims. Accordingly, we affirm the April 18, 2002, order of the Circuit Court of Mason County that granted summary judgment to W.Va. Fire & Casualty.

Affirmed.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

STARCHER, Justice, concurring:

I join the majority's opinion with some fear and trepidation for what future litigation might bring. Whenever some sexual misconduct occurs, and a person is harmed by that misconduct, insurance companies are likely to wave the instant case and our holding in *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988) for the proposition that there can *never* be liability insurance coverage for sexual misconduct. That interpretation of the instant case and *Leeber* is wrong.

Under an intentional acts exclusion in a liability insurance policy, an insured can be denied coverage only if the insured "(1) committed an intentional act *and* (2) expected or intended the specific resulting damage." Syllabus Point 7, *Farmers and Mechanics Mut. Ins. Co. v. Cook*, 210 W.Va. 394, 557 S.E.2d 801 (2001). Both the instant case and the *Leeber* case demonstrate circumstances where an insured intentionally assaulted a plaintiff, and by inference, expected or intended physical and psychological harm. In the *Leeber* case, the insured was a junior high school teacher who admitted to sexually abusing a student; in the case at bar, Jesse Stanley is alleged to have deliberately sexually assaulted his niece. There is no way on God's green earth that either of these tortfeasors should have been permitted to shift the cost of their conduct onto an insurance company.

As for Jesse's parents, the same analysis applies, but a different result might have been had—if the plaintiff's complaint been drafted differently. If Jesse's parents had not intentionally sent their granddaughter into harm's way, or had not expected that their son would physically and emotionally harm their granddaughter, then they might have been entitled to indemnity and a defense from their liability insurance company. In other words, if the plaintiffs had alleged that these parents had acted with innocence—for instance, not knowing of their son's violent, abusive tendencies, or not expecting that their son would inflict those tendencies on a younger family member— then the parents could not have been acting "intentionally," and they would be entitled to liability insurance coverage and/or a legal defense.

When a liability insurance company receives a copy of a complaint against an insured, the insurance company decides whether it must provide liability coverage and/or a defense to the insured based upon two documents: the complaint, and the insurance policy. As we stated in *State Auto. Mutual Ins. Co. v. Alpha Engineering Services, Inc.*, 208 W.Va. 713, 716, 542 S.E.2d 876, 879 (2000) (*per curiam*) (citations omitted):

> In other words, an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

*See also*, Lee R. Russ, 14 *Couch on Insurance* § 200:20 (1999) ("Although there are exceptions, as a general rule, an insurer's duty to defend the insured is determined primarily by the pleadings in the underlying lawsuit, without regard to their veracity, what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim."). This rule has variously been called the "four corners"

rule (because the insurance company's duty is defined by the allegations in the "four corners" of the complaint); the "eight corners" rule (that is, the insurance company or trial court compares the "four corners" of the complaint with the "four corners" of the insurance policy); the complaint rule; the exclusive pleading rule; and the scope of the allegations test. *See* Susan Randall, *Redefining the Insurer's Duty to Defend,* 3 Conn. Ins.L.J. 221, 226 (1996/1997).

The obvious rule for plaintiff's lawyers to take away from this case is to carefully plead any case involving sexual misconduct or other intentional tort. If a defendant is likely to be held vicariously or secondarily liable for someone else's intentional misconduct, the plaintiff should artfully draft the complaint to make clear that the defendant did not act with intent or intend an injury. For instance, if the plaintiff merely alleges that a defendant is liable for failing to supervise another person—be it a child, an agent, or an employee—and that other person committed an intentional tort, there would still be liability insurance coverage for the insured defendant's negligence in supervision. The end result of this rule is that an insured innocent parent, or employer, or school board, will still have insurance coverage for his, her or its negligence if a child, agent or employee commits an intentional tort.

As the majority opinion makes clear, the complaint in the instant case makes repeated assertions that Jesse's parents, Glen and Helen Stanley, knew of their son's deviant sexual propensities, and deliberately and repeatedly sent their granddaughter Cass–Sandra into secluded areas with Jesse with the knowledge she would be harmed. The knowledge and intent of Glen and Helen Stanley can be inferred from the general allegations in the complaint that they concealed the sexual assaults from Cass–Sandra's parents and from law enforcement authorities, and the allegation that the Stanleys used threats, intimidation and violence to conceal the crimes of their son. .

In sum, West Virginia Fire & Casualty had no duty to indemnify or defend Glen and Helen Stanley in this case because of the way the complaint was drafted. Neither we nor any other court could reasonably construe this complaint to allege anything but deliberate misconduct with an intent to cause harm on the part of the insureds.

Frankly, I am not certain why counsel for the plaintiffs chose to draft the complaint in this way, unless there was simply no doubt in counsel's mind that the evidence will show that Glen and Helen Stanley acted intentionally with an intent to cause harm. The record does suggest that the Stanleys have significant financial resources, and it is possible counsel deliberately drafted the complaint in this manner so as to deprive the Stanleys of an insurance-company-provided defense, and to make them personally liable for all costs. Whether this is the case, I simply do not know.

I agree with the result in the instant case, though, because the facts alleged in the complaint plainly deprived Jesse, Glen and Helen Stanley of any entitlement to indemnification or a defense under their liability insurance policy. I therefore respectfully concur.

(Filed July 8, 2004)