**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-1889**
_____

BRANDON PEGG; KRISTINA PEGG, husband and wife,

　　　　　Plaintiffs – Appellants,

　　　v.

NATHAN TYLER KLEMPA, individually and in his capacity as agent and employee of the City of Glen Dale Police Department; GRANT HERRNBERGER,

　　　　　Defendants - Appellees.

_____

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  Frederick P. Stamp, Jr., Senior District Judge.  (5:13-cv-00173-FPS)

_____

Submitted:  March 15, 2016　　　　　Decided:  June 6, 2016

_____

Before NIEMEYER, KING, and DIAZ, Circuit Judges.

_____

Affirmed in part, and reversed in part by unpublished per curiam opinion.

_____

Robert G. McCoid, MCCAMIC, SACCO & MCCOID, P.L.L.C., Wheeling, West Virginia; Paul J. Harris, HARRIS LAW OFFICES, Wheeling, West Virginia, for Appellants. Montè L. Williams, Deva A. Solomon, Robert L. Bailey, STEPTOE & JOHNSON, PLLC, Morgantown, West Virginia; Keith C. Gamble, PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC, Morgantown, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brandon Travis Pegg and Kristina Pegg appeal the district court's grant of summary judgment in favor of Defendants-Appellees Nathan Tyler Klempa and Grant P. Herrnberger on the basis of qualified immunity. The Peggs raised constitutional claims under 42 U.S.C. § 1983 (2012), as well as related state law claims, against Klempa and Herrnberger arising from a traffic stop of the Peggs' vehicle. The amended complaint alleged: (1) unlawful arrest of Mr. Pegg; (2) unlawful detention of Mrs. Pegg; (3) excessive force as to Mr. Pegg; (4) intentional infliction of emotional distress as to both Mr. and Mrs. Pegg; (5) battery of Mr. and Mrs. Pegg; and (6) civil conspiracy to unlawfully detain and search the Peggs.

After the Peggs filed this action, Klempa and Herrnberger moved for summary judgment, arguing that they were entitled to qualified immunity. The district court granted the defendants' motions for summary judgment on the basis of qualified immunity. In regard to Mr. Pegg's claims, the court concluded that the officers had not unreasonably extended the traffic stop and, once Mr. Pegg refused to exit his vehicle, probable cause existed to arrest him for obstruction. The court also determined that, because the arrest of Mr. Pegg was lawful, the force applied by the officers was not excessive.

2

As to Mrs. Pegg's claims of unlawful detention, the court concluded that Herrnberger reasonably believed that she was dangerous and was therefore justified in frisking her. The court determined that, similar to Herrnberger's frisk of Mrs. Pegg, Klempa's searches of her purse and the vehicle were justified by officer safety concerns.[1] Finally, the court concluded that Mrs. Pegg had not been the victim of a battery as a result of the frisk, and that the remainder of the Peggs' state law claims were also barred by qualified immunity.

On appeal, the Peggs assert three errors in the district court's decision. First, they argue that the officers unnecessarily extended the duration of the traffic stop and did not order Mr. Pegg from the vehicle because of safety concerns. Therefore, they argue, Mr. Pegg's arrest for failing to exit the vehicle was unlawful. Second, they argue that no facts establish an objective, reasonable suspicion that Mrs. Pegg was armed and dangerous, and therefore the search of the vehicle, frisk of Mrs. Pegg, and search of her purse violated the Fourth

---

[1] The court noted that Mrs. Pegg had consented to the search of her purse, but concluded that it was "unclear whether Mrs. Pegg's consent was voluntarily given." Because the court determined that the search was valid regardless of consent, it did not reach a determination as to whether consent was voluntary.

Amendment. Finally, they argue that Herrnberger's frisk of Mrs. Pegg constituted battery, as it involved offensive touching.

We "review the district court's grant of summary judgment de novo, applying the same standard as the district court . . . [and] construing the evidence in the light most favorable to [the Peggs], the non-movant[s]." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207 (4th Cir. 2014). Summary judgment is appropriate if there is no genuine issue as to material fact and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Thus, to successfully avail themselves of qualified immunity, Klempa and Herrnberger must show either that no constitutional violation occurred or that the right was not clearly established at the time it was violated.[2] Id. In

---

[2] West Virginia law similarly follows a two-step inquiry to determine whether an officer is entitled to qualified immunity: "(1) does the alleged conduct set out a constitutional or statutory violation, and (2) were the constitutional standards clearly established at the time in question?" Hutchison v. City of Huntington, 479 S.E.2d 649, 659 (W. Va. 1996). Additionally, an official is not entitled to qualified immunity if his or her conduct was "fraudulent, malicious, or otherwise oppressive." Id.

4

evaluating whether the right was clearly established, we look "not to whether the right allegedly violated was established 'as a broad general proposition' but whether 'it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted.'" Raub v. Campbell, 785 F.3d 876, 882 (4th Cir.) (quoting Saucier v. Katz, 533 U.S. 194, 201–02 (2001), cert. denied, 136 S. Ct. 503 (2015).

With regard to Mr. Pegg's claim of unlawful arrest, we conclude that the district court did not err in finding that the officers are entitled to qualified immunity. The constitutionality of a traffic stop is analyzed under a two-prong standard: first, we determine "whether the officer's reason for the traffic stop was legitimate" and, if so, we examine "whether the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015) (internal quotation marks omitted). "Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015) (internal citations omitted). The central question is whether the officer's action, "viewed objectively and in its totality, is reasonably directed toward the proper ends of the

stop." United States v. Digiovanni, 650 F.3d 498, 508 (4th Cir. 2011).

As to the first prong, Mr. Pegg concedes that his vehicle had an inoperative license plate light and therefore the initial justification for the traffic stop was valid. Regarding the second prong of the inquiry, we conclude the officers' actions up to and including ordering Mr. Pegg from the vehicle were reasonably directed toward the proper purpose of the traffic stop.

After stopping the Peggs' vehicle, Klempa had a brief conversation with Mr. Pegg regarding the traffic stop, a conversation that was extended by Mr. Pegg's initial recalcitrance. Mr. Pegg eventually turned over his documentation and Klempa ran checks on the documentation, all of which was proper. Digiovanni, 650 F.3d at 507. Only five minutes elapsed by the time Klempa returned to Mr. Pegg's vehicle.

Klempa wanted Mr. Pegg to exit the vehicle for two reasons: (1) because of concerns for officer safety; and (2) to show Mr. Pegg the burned-out light and issue a verbal warning. This directive was not unconstitutional.

As an initial matter, the traffic stop itself had not concluded as Klempa had not yet issued the warning to Mr. Pegg. See United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008)

6

("once . . . the police officer has issued the requisite warning or ticket, the driver must be allowed to proceed on his way"). Moreover, when viewed in context, ordering Mr. Pegg from the vehicle was reasonably related to the purpose of the traffic stop. From the moment the stop began, Mr. Pegg was agitated and expressed incredulity when notified of the reason for the traffic stop. Therefore, while it was perhaps unnecessary for Klempa to order Mr. Pegg from the vehicle, it was also reasonably directed toward the proper purpose of the stop—demonstrating to Mr. Pegg that there was a legitimate defect with his vehicle, and issuing a verbal warning relating to that defect. Furthermore, Mr. Pegg confirmed during his deposition that, at the time he was asked to exit his vehicle, the officers were standing in or near the lane of traffic. The stop occurred in the evening on New Year's Eve, an evening when, as the Peggs' expert testified, there is a higher-than-usual likelihood of drunk driving. Thus, ordering Mr. Pegg from his vehicle was also justified by concerns for officer safety.

Because it was reasonably directed toward the purpose of the stop, Klempa's decision to order Mr. Pegg from the vehicle did not unreasonably extend the duration of Mr. Pegg's detention. The officers therefore maintained authority to order Mr. Pegg from the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). When Mr. Pegg refused the lawful command given by

7

the officers, they had probable cause to believe that Mr. Pegg was obstructing an officer. See City of Saint Albans v. Botkins, 719 S.E.2d 863, 872 (W. Va. 2011) ("Once Appellee refused to comply [with the officer's order], a reasonable officer may have believed the refusal to be an attempt to obstruct the officer"). The arrest was lawful, and Mr. Pegg's claim for unlawful arrest therefore fails, as do his related claims.

Turning to the search of the Peggs' vehicle, although warrantless searches of a vehicle are "presumptively unreasonable," several exceptions exist. United States v. Holmes, 376 F.3d 270, 274-75 (4th Cir. 2004). Of relevance to this case,

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Michigan v. Long, 463 U.S. 1032, 1049 (1983) (internal quotation marks omitted). Thus, to conduct a lawful search pursuant to such safety concerns, "an officer must possess a reasonable belief of both (1) the suspect's dangerousness and (2) the possibility that the suspect might gain immediate control of any weapons inside the vehicle." United States v. Griffin, 589 F.3d

8

148, 153 (4th Cir. 2009).  We examine "the totality of the circumstances in determining whether the requisite reasonable suspicion existed."  United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008).

By the time Klempa performed a search of the vehicle, Mr. Pegg had been handcuffed and placed in the back of Klempa's vehicle.  Consequently, any concern for officer safety had to be based on a threat posed by Mrs. Pegg, rather than Mr. Pegg.  The district court determined that the officers had a reasonable suspicion that Mrs. Pegg was dangerous because: (1) it was evening on New Year's Eve; (2) prior to being arrested, Mr. Pegg had been agitated and failed to follow officer commands; (3) it would be "reasonable . . . to believe that . . . Mrs. Pegg[] was also agitated and a risk" to officer safety; and (4) Mrs. Pegg had opened her car door and asked why her husband was being arrested.

Certainly, the fact that the stop occurred at nighttime on New Year's Eve supports reasonable suspicion.  Even assuming that Mr. Pegg's agitation and failure to comply with officer commands is relevant to Mrs. Pegg's dangerousness, these circumstances fall well short of the requisite reasonable suspicion needed to believe that Mrs. Pegg was a threat.

No evidence demonstrates that Mrs. Pegg was nervous, angry, or irritated.[3] To the contrary, she was cooperative and compliant during the traffic stop. When Mr. Pegg was initially uncooperative with Klempa, Mrs. Pegg encouraged him to comply with Klempa's order. When asked, Mrs. Pegg: (1) produced her identification; (2) closed her door and stayed quiet; (3) exited the vehicle to be searched; and (4) lifted her shirt and coat to expose her torso to Herrnberger. During his deposition, Herrnberger was unable to remember or articulate a single fact that supported a reasonable suspicion that Mrs. Pegg presented a threat.

---

[3] Contrary to the district court's determination, it is entirely reasonable for an individual, upon witnessing her spouse being handcuffed and placed in a police cruiser, to ask if and why her spouse was being arrested. Nor is it suspicious that Mrs. Pegg opened the door to do this, as she did so merely to gain the attention of one of the officers. See United States v. McCraney, 674 F.3d 614, 621 (6th Cir. 2012) (concluding that, where an individual exits the vehicle not to flee but to get the officer's attention, such behavior does not contribute to reasonable suspicion).

Additionally, we question the district court's determination that it would be reasonable to assume that Mrs. Pegg was agitated. There is no indication that Mrs. Pegg was angry, agitated, or irritated during or after her husband's arrest or that the officers believed she was agitated and, absent such evidence, reaching that assumption on summary judgment inappropriately ignored the requirement that facts be viewed in the light most favorable to Mrs. Pegg, and that all reasonable inferences be drawn in her favor. Any assumed agitation cannot, therefore, support a particularized suspicion that Mrs. Pegg was dangerous.

10

The evidence establishes that Mrs. Pegg had no known criminal history or history of violence. At the time the search was conducted, no individuals were near the officers other than Mrs. Pegg, and the officers outnumbered Mrs. Pegg three to one. There is no evidence that the location of the traffic stop was a high crime area. Nor is there any evidence that the officers actually believed that Mrs. Pegg posed a threat; indeed, they left her entirely unattended, prompting her to open her door simply to gain an officer's attention. We therefore conclude that no reasonable officer would have believed that Mrs. Pegg was dangerous.

Moreover, Mrs. Pegg's right to be free from a search under these circumstances was clearly established at the time of the traffic stop. See United States v. Neely, 564 F.3d 346 (4th Cir. 2009). Police may conduct a frisk of a passenger during a traffic stop where: (1) "it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation;" and (2) the police "harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 327 (2009).

Reasonable suspicion must be particularized and objective. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety

11

or that of others was in danger." United States v. Powell, 666 F.3d 180, 186 (4th Cir. 2011) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). This determination must be "based on commonsense judgments and inferences about human behavior and it is measured by the totality of the circumstances." Id. (quoting Illinois v. Wardlow, 528 U.S. 119, 125 (2000)).

As detailed above, the evidence in this case strongly supports a conclusion that no reasonable officer would have believed that Mrs. Pegg was dangerous. Although the stop occurred after dark, and Mr. Pegg was somewhat uncooperative but not threatening during the stop, there is simply no evidence that Mrs. Pegg presented any threat.

Furthermore, at the time of the search, a number of our cases made clear that something more than the circumstances facing Klempa and Herrnberger was required to support a belief that Mrs. Pegg was dangerous. See Powell, 666 F.3d at 187-88 (knowledge of a past criminal record and providing officers with false information was insufficient to create reasonable suspicion); United States v. Massenburg, 654 F.3d 480, 488-91 (4th Cir. 2011) (presence in a high crime area shortly after police received anonymous tip concerning random gunfire in the area does not create reasonable suspicion); United States v. Foster, 634 F.3d 243, 246-49 (4th Cir. 2011) (knowledge of a

12

suspect's criminal history, sudden movements, and arm shifting were insufficient).

We thus conclude that, at the summary judgment stage, Herrnberger is not entitled to qualified immunity for his frisk of Mrs. Pegg, and Klempa is not entitled to qualified immunity for his search of Mrs. Pegg's purse.[4]

Finally, in West Virginia, an individual commits the tort of battery where "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting Restatement (Second) of Torts, § 13 (1965)).

We conclude that an unauthorized frisk constitutes an offensive contact sufficient to satisfy the requirements for battery. See Terry, 392 U.S. at 24-25 ("Even a limited search of the outer clothing for weapons . . . must surely be an annoying, frightening, and perhaps humiliating experience"). Moreover, because Herrnberger conducted a frisk that was not

---

[4] As previously noted, the district court did not resolve the question of whether Mrs. Pegg voluntarily consented to the search of her purse. Because the issue of consent was not decided by the district court and has not been raised on appeal, we leave resolution of this issue to the district court.

13

necessary for officer safety, he was not privileged to create that offensive contact with Mrs. Pegg. <u>See</u> Restatement (Second) of Torts § 10 (2)(b) (1965) (A privilege may be based upon . . . the fact that its exercise is necessary for the protection of some interest . . .").  We therefore conclude that the district court erred in granting summary judgment in favor of Herrnberger on this claim.

Accordingly, we affirm in part and reverse in part the district court's order, and remand for further proceedings consistent with this opinion.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED IN PART</u>,
<u>REVERSED IN PART</u>

14